IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2019

### STATE OF TENNESSEE v. JONATHAN BLAKE HART

**Direct Appeal from the Circuit Court for Henderson County**
**No. 16133-3      Kyle C. Atkins, Judge**

_____

### No. W2018-02123-CCA-R3-CD

_____

A Henderson County jury convicted the Defendant, Jonathan Blake Hart, of rape of a child and aggravated sexual battery, and the trial court sentenced him to fifty-five years in the Tennessee Department of Correction. On appeal, the Defendant asserts that the trial court erred when it: (1) barred his father from testifying; (2) denied his motion to exclude the medical expert's conclusion that child sexual abuse had occurred; (3) admitted drawings from the forensic interview; and (4) limited his cross-examination of an investigator. The Defendant also contends that the evidence is insufficient to support his convictions and that his motion for new trial should have been granted on these same grounds. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Samuel W. Hinson, Lexington, Tennessee, for the appellant, Jonathan Blake Hart.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Chadwick R. Wood, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's rape of the victim, a nine-year-old girl who was his girlfriend's daughter and with whom he lived. Based on this conduct, a Henderson County grand jury indicted the Defendant for two counts of rape of a child.

Prior to trial, the Defendant filed a motion in limine[1] seeking to exclude testimony by the State's medical expert regarding her diagnosis of "child sexual abuse." The trial court denied the Defendant's motion on the grounds that the expert's medical diagnosis of "child sexual abuse" encompassed a larger definition than the elements of rape of a child, the ultimate issue in the case.

## A. Trial

The following evidence was presented at the Defendant's trial: Kim Gibson testified that she worked at the Carl Perkins Center for Child Abuse in 2016 as a forensic interviewer. Ms. Gibson stated that she interviewed the victim in this case, S.C.L.,[2] at the child abuse center in January of 2016. Ms. Gibson and the victim were alone in the interview room, and the interview was video recorded. The hour-long recording was played for the jury. In the interview, the victim told Ms. Gibson that she was "great" except that her "dad" had done things to her that were not supposed to happen to a child. She identified her dad as the Defendant and said that he had "raped" her. The victim said that the Defendant put his "thing" in her bottom and made her bottom bleed. The victim said it happened more than once; the first time was in an apartment she referred to as "McKenzie." The victim told Ms. Gibson details about how the Defendant initiated the rape. The victim said that the rape hurt and that the Defendant raped her in her "private spot." The Defendant told the victim not to tell her mother, who was out getting groceries. The victim recalled that she was going to a swimming party that day and that she was wearing a swimsuit when he raped her. She stated that it was a pink one-piece swimsuit and that she was wearing blue shorts. The victim described being in the Defendant's bedroom and him bending her over and "humping" her, and the Defendant saying how good it felt. The victim described the Defendant's penis for Ms. Gibson and drew a picture of it. She stated that the Defendant put lotion on his penis. She described the noises the Defendant made.

During the interview, the victim drew pictures of the Defendant being hanged and wrote, "Die. Die. Die." The victim described the Defendant making her perform oral sex on him and said that she tasted blood while she did so. She described his penis as feeling squishy and said the "stuff" that came out of his penis was white and looked like "milk." The victim described wiping the "stuff" off of her with a towel after it splattered "all over [her] face." After moving from the McKenzie apartment, the victim recalled moving several times. In "Lexington," the victim stated that the Defendant took his pants off and almost raped her, but she asked to go to the bathroom. The Defendant then asked her to massage his back. The victim denied anything had happened except at the apartment in McKenzie. The victim described hearing the

---

[1] The motion is not included in the record.

[2] It is the policy of this court to refer to minor victims by their initials.

Defendant and her mother "humping" loudly in the apartment.

The victim described touching the Defendant's penis and him making her go "slow" so "stuff" would not come out of it. The victim recalled a trailer in the Pin Oak neighborhood where the victim said the Defendant raped her in the back room of the trailer. The victim said the Defendant used lotion on himself and told her to bend over. She said the Defendant was drunk and that he put his penis in her "private spot" and that it hurt. She stated that her bottom was bleeding.

Ms. Gibson testified that, during her interview with the victim, the child was "responsive," but Ms. Gibson did not ask the victim leading questions, only follow- up questions.

On cross-examination, Ms. Gibson stated that it was not unusual for child victims to recant their claim of sexual abuse, simply because they wanted their lives to return to normal. When asked if the victim appeared to be traumatized when discussing the events, Ms. Gibson stated that the victim drew some pictures during the interview that indicated her negative feelings toward the Defendant. Ms. Gibson agreed that the victim was not upset, crying, or screaming during the interview and that she seemed comfortable. Ms. Gibson agreed that, during the interview, the victim referred to another man touching her but did not provide any details so Ms. Gibson did not ask any follow-up questions about the second man. Ms. Gibson stated that if a victim has been "coached" into making his or her accusations, the victim often cannot provide sensory details or answer additional questions. Ms. Gibson confirmed that the victim identified several other family members who were present during these incidents but stated it was not her job to follow-up with those individuals.

On redirect examination, the State sought to publish the victim's drawings from her interview to the jury, and the Defendant objected on the grounds that they had no probative value. The trial court overruled the objection, concluding that the drawings were probative to the issue of the victim's state of mind, which had been raised during cross-examination of Ms. Gibson. The pictures, drawn by the victim, showed the Defendant and the victim's writing, "You shouldn't be my dad anymore;" "You are the worst dad ever;" "Die, Dad. I hate you;" and "Hate you." In Ms. Gibson's opinion, the drawings were indicative of the victim's trauma. She reiterated that she did not see any evidence of "coaching" when she met with the victim.

S.C.L., the victim in this case, testified that she was twelve years old at the time of trial. She recalled her interview with Ms. Gibson, which occurred when she was nine years old, almost ten. The victim stated that she had watched the video recording of the interview and that she had been truthful in it. She stated that the "Daddy" she referred

to in the video was the Defendant.

On cross-examination, the victim testified that she lived with her mom who was not present at the trial.

Investigator David Dowdy testified that he was a criminal investigator for the Henderson County Sheriff's Office. He stated that multiple investigations in other jurisdictions were being conducted on this case during his own investigation due to the fact that the victim had made statements about the abuse occurring in multiple locations in different counties. Investigator Dowdy testified that he observed the victim's forensic interview with Ms. Gibson, at the request of the Lexington Police Department. Investigator Dowdy stated that, during the interview, the victim described incidents with the Defendant in the city of Lexington as well as in the town of McKenzie. He contacted the McKenzie Police Department based on the victim's report of an incident occurring there. In keeping with his jurisdictional authority, Investigator Dowdy was "tasked" with investigating an alleged incident in the Pin Oak area, an area of Henderson County not located within any incorporated city limits.

Based on his observations of the victim's statements, Investigator Dowdy was able to corroborate some of the facts provided by searching through old police records, specifically a prior instance when the victim's mother called the police regarding a domestic disturbance with the Defendant at a certain address in the Pin Oak area. Investigator Dowdy sought the warrant for the Defendant's arrest in this case, using the date of that incident, October 29, 2012, when the victim claimed the Defendant had sexually assaulted her. Investigator Dowdy stated that he arrested the Defendant quickly because of the Defendant's access to the victim but continued to investigate the matter following the arrest.

On cross-examination, Investigator Dowdy agreed that the victim did not recall dates or time periods of the events with complete accuracy and that he was unable to determine an exact date of the offenses. He relied almost entirely on information provided by the victim for probable cause for the arrest warrant. He agreed that the victim was inconsistent with regards to her age at the time of the incidents and the dates on which they occurred, but he stated that he thought the victim was "off" regarding her dates and time periods, not mistaken altogether. Investigator Dowdy reiterated that he arrested the Defendant before he was able to corroborate some or all of the victim's statements or investigate the inconsistencies in her statements to Ms. Gibson and Dr. Piercy who examined the victim. Investigator Dowdy stated that such inconsistencies were not uncommon for interviews with children. Investigator Dowdy agreed that the victim named a "white man" as one of her abusers to Ms. Gibson and that the victim stated that the man had done the same things to her as the Defendant and at the same

4

location.  He agreed that the victim did not mention the "white man" to Dr. Piercy.  Investigator Dowdy stated he recalled asking the victim about the "white man" but could not be sure he had done so.   He also stated that the victim's mother was asked about the "white man."

Investigator Dowdy testified that he had not spoken with Dr. Piercy about her examination of the victim.   He stated that the victim did not give any names of abusers other than the Defendant.   The victim's mother was asked who the "white man" could be, and she did not know of anyone.   He agreed that the victim's mother was not going to be testifying.   He also agreed that he did not follow up on a report that the victim saw her school's nurse for "anal pain."   In terms of his investigation, Investigator Dowdy spoke to the victim, her mother, the referring government organization, and the Defendant.

At this point, counsel for the Defendant attempted to ask Investigator Dowdy about the Defendant's statements to him, and the State objected on the grounds that the Defendant's statements were hearsay and would be self-serving.   The Defendant replied that he was not offering the statements to prove their truth but to show that Investigator Dowdy had not fully investigated the case.   The State replied that it would be an improper way of admitting the Defendant's statements without his testifying.   The trial court sustained the objection.   Investigator Dowdy testified that, following the interview with Ms. Gibson, the victim "recanted" her statement about the "white man," and he did not pursue the matter further.   The Defendant's attorney then asked Investigator Dowdy whether the victim's mother was still visiting the Defendant while he was in jail, and the State objected on the basis of relevance.   The Defendant responded that Investigator Dowdy never looked into the context of the mother's visits with the Defendant in jail, which spoke to the credibility of his investigation.   The trial court sustained the objection on the grounds that the victim's mother's interactions with the Defendant had no relevance as to whether or not the Defendant raped the victim.   The trial court did allow the Defendant to ask the investigator whether he was aware of the visits, but nothing further.

On redirect-examination, Investigator Dowdy confirmed that the Defendant had pending child rape charges in another county.   He also confirmed that the victim's family moved multiple times during the year of the offenses and that fact made it harder for the victim to recall dates and locations.   Investigator Dowdy stated that he selected an offense date, October 29, 2012, based on the victim's statement that it was a date when the police were called to her house about an alleged domestic disturbance.   He was able to discern that date based on corresponding police reports generated from that call.

5

Dr. Lisa Piercy testified as an expert in the field of pediatrics and child abuse, based on her medical specialty in the area of diagnosing child maltreatment. Dr. Piercy evaluated and examined the victim in this case on January 15, 2016. The victim identified the Defendant to Dr. Piercy as the man who abused her and stated that he lived with her. Dr. Piercy later spoke to the victim's mother who reported that the Defendant had been in the victim's life since infancy and had raised the victim as his own child. Dr. Piercy asked the victim about the reason for their conversation, and the victim responded, "[the Defendant] did stuff to me a lot of times, too many times to count."

Dr. Piercy asked the victim when the "events" involving the Defendant would occur, and the victim stated that they occurred every day when her mother went to work. The victim described the first incident as the Defendant lying on top of her, opening her legs, and "putting his private spot in my private spot." The victim described later incidents of the Defendant anally penetrating her. She included details such as his not allowing the victim to watch her tablet while he raped her. The victim described having pain afterwards and bleeding occasionally, which led her to see the school nurse.

The victim told Dr. Piercy that the Defendant would use lotion to lubricate himself to allow for anal penetration following which he would make loud "moaning" noises. The victim said, "White sticky stuff would come out of the opening of my bottom, and [the Defendant] would wipe it up with a paper towel and then put the paper towel at the bottom of the trash can so my mom wouldn't see it and know what it was." The Defendant threatened physical violence if the victim told her mother. The victim stated that the Defendant took pictures of her with his phone while she was bent over. He also forced her to perform oral sex on his penis, and he would ejaculate in her mouth. The Defendant showed the victim nude pictures of women on his phone and forced her to perform oral sex again. He also put his mouth on her private areas.

The victim told Dr. Piercy that the Defendant would give her strawberry liquor prior to raping her and that it made her feel dizzy and sleepy. He also forced her to smoke "weed" from an electronic cigarette, which she stated made her confused and gave her a strange sensation inside her mouth.

Dr. Piercy testified that she gave very little weight to the victim's timeline of the events, given the victim's young age at the time of reporting, eight years old. The victim was able to describe an event that happened a few weeks prior to Christmas, which Dr. Piercy stated was the most she could expect from someone the victim's age.

Dr. Piercy spoke to the victim's mother who confirmed that the Defendant was her longtime boyfriend and that the victim had complained of anal pain. Dr. Piercy performed a physical examination of the victim, which revealed that the victim's anus

6

was particularly dilated with some scarring present. Dr. Piercy stated that this was unusual for a child. Dr. Piercy stated that the anal scar was completely healed, which indicated to her that it was older. Dr. Piercy described the victim's anal findings as highly suspicious and consistent with child sexual abuse.

On cross-examination, Dr. Piercy stated that the detail and sensory descriptions given to her by the victim were inconsistent with the victim being untruthful. The victim stated, during their conversation, that the most recent rape had occurred "during Christmas break, when she was in the fourth grade . . . in the house on Barnhill Street."

On redirect-examination, Dr. Piercy stated that the victim's mother corroborated the victim's statements about the rapes although in less detail. Dr. Piercy stated her opinion that the victim did not display the signs of being coached to lie about her accusation.

The State rested its case and, outside the presence of the jury, the defense informed the trial court that the Defendant wished to call his father to testify about an incident between the Defendant and the victim's mother, during which the victim's mother allegedly yelled at the Defendant that she would seek revenge for him having sexual relations with another woman. The State objected that the Defendant's father testifying about the victim's mother's statements would be inadmissible hearsay. The State contended that the victim's mother should have been subpoenaed to testify. The trial court agreed and stated that the Defendant's father would not be allowed to testify about a statement made by the victim's mother.

The Defendant then sought to call the victim's paternal great-grandmother, Buton Taylor, to testify that the victim had not asked her to wash a towel with semen on it, as the victim had alluded to in her interview with Ms. Gibson. The trial court stated that it would allow limited testimony on that event. Ms. Taylor testified that in 2016 the Defendant was living with his father on Barnhill Street, along with the victim, the victim's mother, and two other children. During that time, Ms. Taylor went to the Barnhill Street house and picked up the family's laundry to wash at her home, including the victim's laundry.

Based upon the evidence presented at trial to the jury, the Defendant was convicted of rape of a child and aggravated sexual battery. The trial court imposed consecutive sentences of twenty-five years for the rape of a child conviction and thirty years for the aggravated sexual battery conviction for a total effective sentence of fifty-five years. It is from these judgments that the Defendant now appeals.

## II. Analysis

7

On appeal, the Defendant asserts that the trial court erred when it: (1) barred his father from testifying; (2) denied his motion to exclude Dr. Piercy's conclusion that child sexual abuse had occurred; (3) admitted drawings from the forensic interview with Ms. Gibson; and (4) limited his cross-examination of Investigator Dowdy. He further contends that the evidence is insufficient to sustain his convictions and that the trial court should have granted his motion for new trial on the same grounds that are raised in this appeal.

## A. Evidentiary Issues

As stated above, the Defendant raises several issues with regards to the admission of evidence. Under Rule 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Rule 402 states, "All relevant evidence is admissible except as provided by the Constitution of the United States, the Constitution of Tennessee, these rules, or other rules or laws of general application in the courts of Tennessee. Evidence which is not relevant is not admissible." Tenn. R. Evid. 402. Finally, Rule 403 states, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. "The decision regarding the admissibility of [evidence] pursuant to these Rules lies within the sound discretion of the trial court and will not be overturned on appeal absent a clear showing of an abuse of that discretion." *State v. Young*, 196 S.W.3d 85, 105 (Tenn. 2006) (citing *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978)).

## 1. Father's Proposed Testimony

The Defendant asserts that the trial court erred when it excluded his father's testimony. He contends that his father's testimony that the victim's mother had threatened the Defendant with revenge by saying, "I'm going to get you," supported the defense theory that the victim had been coached by her mother into making the rape accusation. He contends that the statement was not being offered for the truth of the matter asserted but was being presented to show that law enforcement had not sufficiently investigated any possible "coaching" or fabrication by the victim and her mother, and therefore the statement should not have been excluded by the hearsay rule. He further argues that, even if the testimony was hearsay, the statement was admissible pursuant to the "excited utterance" or "state of mind" hearsay exception. The State responds that the Defendant has waived all aspects of this issue because segments of his

argument were either not raised at trial or not raised in the motion for new trial. The State contends that the Defendant is not entitled to relief pursuant to the plain error doctrine.

At trial, the Defendant alerted the trial court that the Defendant's father intended to testify about a statement made by the victim's mother. The trial court concluded it would not allow the testimony on the grounds that it was hearsay. The Defendant's father did not testify. The Defendant did not seek to make an offer of proof regarding what his father would have testified to had he been permitted to do so by the trial court. An offer of proof is a means by which to ensure "effective and meaningful appellate review." *State v. Hall*, 958 S.W.2d 679, 691 n.10 (Tenn. 1997). It is the duty of the appellant to provide a record that conveys a fair, accurate, and complete account of what transpired with regard to the issues which form the basis of the appeal. *See* Tenn. R. App. P. 24(b) ("the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal"); *see State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). "[G]enerally, if an offer of proof is not made, the issue is deemed waived and appellate review is precluded." *Id.* The Defendant's failure to make an offer of proof precludes effective and meaningful appellate review of the issue; therefore, the issue is waived, and the Defendant is not entitled to relief.

## 2. Dr. Piercy's Testimony

The Defendant contends that the trial court erred when it allowed Dr. Piercy to testify about her medical assessment concluding that child sexual abuse had occurred in this case. He contends that, because this conclusion was the "ultimate issue" in this case, her testimony on the subject should have been excluded. The State responds that the Defendant's motion to exclude this testimony, filed before trial as reflected by the trial court's order, is not included in the record and, even so, the trial court properly found that Dr. Piercy's testimony was relevant and probative on the basis that it was a medical opinion and not a legal opinion on the matter of whether a rape had occurred.

It is the duty of the appellant to provide a record that conveys a fair, accurate, and complete account of what transpired with regard to the issues which form the basis of the appeal. *See* Tenn. R. App. P. 24(b) and *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). The failure to prepare an adequate record for review of an issue results in a waiver of that issue. *Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). The Defendant did not include the motion to exclude Dr. Piercy's testimony in record on appeal. Therefore, this issue is waived and the Defendant is not entitled to relief.

## 3. Forensic Interview Drawings

The Defendant next contends that the trial court erred when it allowed the victim's drawings from the forensic interview with Ms. Gibson to be admitted into evidence. He contends that the drawings were cumulative evidence, because the interview had already been shown to the jury, and therefore the pictures had no additional probative value. The State responds that the Defendant did not raise this claim in his motion for new trial and therefore has waived this issue. As we have stated, "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived. . . ." Tenn. R. App. P. 3(e); *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010); *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). The reasoning behind this rule is as follows:

> First, the State should be apprised of the claims for purposes of preparation and research. Secondly, the trial court should be afforded the opportunity to correct on its own any errors made apparent on the motion for new trial. And third, if the issue is raised and argued at trial, the record on appeal can be properly developed for adequate review.

*State v. Glen Whittenburg*, No. 01C01-9308-CC-00250, 1994 WL 179785, at *3 (Tenn. Crim. App., May 12, 1994), *perm. app. denied* (Tenn., Aug. 29, 1994).

Although the Defendant objected to the admission of the pictures during trial, he failed to raise this argument in his motion for new trial, thereby depriving the trial court of the opportunity to correct any mistake it might have made in admitting the pictures. For this reason, we conclude that the Defendant has waived this argument on appeal.

### 4. Investigator Dowdy's Testimony

The Defendant contends that the trial court improperly limited his cross-examination of Investigator Dowdy about the Defendant's statements to him and about the victim's mother's relationship with the Defendant. He contends that the trial court committed error in excluding this evidence because he was not offering them to prove their truth but that Investigator Dowdy had failed to follow up on these matters during his investigation. He contends that the statements should have been admitted to show their "effect on the hearer." The State responds that the Defendant did not raise these issues in his motion for new trial and thus has waived them on appeal. We agree because, as we have noted, "No issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived. . . ." Tenn. R. App. P. 3(e).

10

# B. Sufficiency of Evidence

The Defendant contends that the evidence is insufficient to sustain his convictions. He argues that the evidence presented of the date of the offense and the victim's age were inconsistent and varied from the allegations in the indictment, amounting to "trial by surprise." Secondly, the Defendant states that the victim never provided a date or accurately stated her age and the date of the offense, October 2012, was chosen by Investigator Dowdy based on a corresponding police report. The State responds that the jury heard all the evidence and determined that the Defendant committed the offenses on dates alleged in the indictment. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of

11

the State.'"  *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)).  The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation.  The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand.  Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses.  In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)).  This court must afford the State the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence.  *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)).  Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict.  *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

Tennessee Code Annotated section 39-13-522(a) defines rape of a child as "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." "Aggravated sexual battery is unlawful sexual contact with a victim by the defendant" where "the victim is less than thirteen years of age."  Tenn. Code Ann. § 39-13-504. Sexual penetration includes "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required."  T .C.A. § 39-13-501(7).  "'Sexual contact' includes the intentional touching of the victim's[ ] [or] the defendant's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's[ ] [or] the defendant's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification."  Tenn. Code Ann. § 39-13-501(6).

The State elected the following set of facts in the indictment for both counts of rape of a child

> On or about October 1, 2012 through November 30, 2012, in Henderson County, Tennessee, [the Defendant] did intentionally,

knowingly, and/or recklessly engage in sexual penetration with [the victim], D/O/B 01/23/2006, a child less than thirteen (13) years of age[.]

The Defendant was convicted as charged in Count 1 and was convicted of aggravated sexual battery as a lesser included offense in Count 2.

The evidence viewed in the light most favorable to the State was that the Defendant anally penetrated the victim with his penis on October 29, 2012.  This date was selected based on the victim's statement that the rape happened on a day when the police were called to her residence by her mother and the corroborating police report.  The victim, who was born in 2006, was less than thirteen years old at the time of the offense.  In an interview with Ms. Gibson, a forensic interviewer, the victim described in detail the Defendant putting his penis in her anus and ejaculating.  She also described him forcing her to perform oral sex on him and ejaculating then as well.  The victim consistently described the same events to Dr. Piercy, who, during a physical examination, confirmed that the victim's anal area was abnormal in a way that Dr. Piercy described as suspicious.  This is sufficient evidence from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of the offenses of rape of a child and aggravated sexual battery.  The Defendant is not entitled to relief.

### C. Motion for New Trial

The Defendant lastly contends that the trial court erred when it denied his motion for new trial on the same bases that he has raised in this appeal.   As we have concluded that none of the issues raised herein amount to error, we conclude that the trial court did not err when it denied the Defendant's motion for new trial.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE